**BLACK BULL, INC., EMPLOYER NO. 18–5813–59707, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION of Utah, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 14051.**

Supreme Court of Utah.
March 25, 1976.

---

1. Rule 1, U.R.S.P., Section 73–2–4, U.C.A.1953.

D. Gilbert Athay, of Athay, Bown & Van Sciver, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Edgar M. Denny, Special Asst. Atty. Gen., Salt Lake City, for defendant.

HENRIOD, Chief Justice:

█ Review of the Commission's Board of Review decision which concluded that musicians performing in a private club under Sections 35–4–22(j)(1) and (j)(5) (A), (B) and (C) of the Employment Security Act, Utah Code Annotated 1953, were "in the employment" of the petitioner, within the meaning of said act,—requiring such petitioner to contribute to the fund provided for in the act for wages they received. Affirmed, with no costs awarded.

The Commission accepted the facts stated in petitioner's brief as being correct so far as pertinent, which were as follows:

The Black Bull is a corporate private club, authorized under Utah law to do business, whose purpose is to provide food and drink for its members.[1] For six weeks the petitioner, through a booking agency, engaged some transient musicians and performers, (a band) to entertain its members. It made no payments to the Department of Security's fund on account of wages paid. The petitioner was not allowed to advertise the band's employment, except to its members. The band was hired through its booking agent, and the petitioner knew neither the names of the individual members of the band, from players of the piano to piccolo, nor what each received, but paid a lump sum to the leader under a contract. Petitioner could neither hire nor fire the band members, nor dictate the type of music played, except it could as to hours of performance, loudness, and adherence to house rules with respect to smoking and drinking on stage.

The Commission relies solely on two decisions of this court to support its insistence that petitioner should have furnished names of those receiving remuneration or "wages" incident to such engagement, and should have paid into the fund, as an employer, the amount called for under the act, which, as a concomitant thereof, would have entitled the musicians to benefits under the act,[2] in the event of coverable unemployment.[3]

These cases are *Singer Sewing Machine v. Industrial Commission,* 104 Utah 175, 134 P.2d 479 (1943), and *Utah Hotel v. Industrial Commission,* 107 Utah 24, 151 P.2d 467 (1944).

The obvious muscle push of the petitioner is that the *Utah Hotel* case should be ignored and reversed,—a sort of left-handed plea,—which, if acceded to, simply would not help petitioner since it would not operate in retroactivity.

█ Without burdening this decision with quotes from *Utah Hotel,* or have some difficulty in distinguishing this case from that, which, having been decided in 1944,

---

1. And obviously and impliedly to furnish entertainment, on occasion,—music, dancing, etc., of erstwhile undefined dimensions.

2. The question as to whether the musicians are covered by some other state, and if so, the emoluments thereof or the intricacies of jurisdictional squabbles, etc., are not germane to this case, and it is assumed here that this engagement was just one in Utah.

3. A sort of queasy, quasi formula to test if an itinerant trumpet player, who, for some reason, might be the victim of or the beneficiary of more than one or less than one unemployment benefit under a particular state's welfare laws.

has stood the test of time for a third of a century without .the legislature having disturbed its interdiction. Had it so desired, it could have amended the provisions of Title 35–4–22 mentioned in paragraph first hereinabove, with a very few words or phrases,—to have agreed with what counsel for the Black Bull is wont to have us now adjust by new statutory construction to accommodate his client and the dissidence of the Washington court,[4]—which we are not inclined to do,—leaving such luxury to the legislature.

In the meantime, since 1944, the petitioner and those having similar enterprises, apparently have operated under a false sense of security, to a point, where, in a case like this, which appears to be a test case and one designed to make a guinea pig out of a black bull, administratively zeroed in on a singled-out orphan, The Employment Security people well might weigh and at least consider forgiving or waiving its present claim against the Bull. This, since it would appear to create an almost impossible burden on the part of the latter if required presently to pursue data and information about some transient music makers who no doubt have vanished with the four winds into the fogs of the seven seas.

It is interesting to note that counsel for the Black Bull, with considerable enthusiasm, addressed himself to the wisdom of the Washington State Supreme Court, in *Seattle Aerie of Eagles v. Commissioner* (footnote 4 herein), authored by one Simpson, J., who voiced the majority opinion of that Court by saying that *Utah Hotel v. Commissioner,* decided by us in 1944, "was not good authority",—without pointing out that three of his colleagues dissented from such wisdom and his opinion, while we, in the *Utah Hotel* case were angelic in our unanimity with respect to the issue involved here. This court does not resent such apodictic assurance of the learned jurist, but have no idea except our own self-assurance, why his three colleagues did not share his thesis, but our's. It is further significantly interesting to note that the Washington case never has been cited with approval, and the *Utah* case has never been cited with disapproval or even with passing criticism save for Simpson, J.'s gratuity. This author, at least, without asking anyone else on the court to subscribe, is not wholly impressed either with the Washington aside, its accuracy, or its protraction,—about which we need not concern ourselves with principles of full faith and credit.

We believe that a trumpet player like any other hand-working trumpeter, equally is entitled to the benefits of the act, and that the legislature felt the same way, irrespective of who gets the paycheck that ultimately is divided with him and others. The Matador should not gore the bull, we think, nor the bull the picador.

CROCKETT and TUCKETT, JJ., concur.

ELLETT and MAUGHAN, JJ., concur in the result.

4. 23 Wash.2d 167, 160 P.2d 614 (1945).